**M & R INVESTMENT COMPANY, INC.,**
Plaintiff-Appellant,

v.

**Frank C. FITZSIMMONS, et al.,**
Defendants-Appellees,

and

**Raymond Donovan,\* Secretary of Labor, United States Department of Labor,**
Intervenor-Defendant-Appellee.

Nos. 80–5281, 80–5538.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1981.

Decided Aug. 24, 1982.

\* Secretary Raymond Donovan is substituted for his predecessor pursuant to Federal Rule of Appellate Procedure 43(c).

284

Andrew F. Puzder, St. Louis, Mo., argued, for M & R Inv. Co., Inc.; Morton R. Galane, Las Vegas, Nev., on brief.

Alan Mund, Fulop, Rolston, Burns & McKittrick, Beverly Hills, Cal., for Fitzsimmons, et al.

Richard P. Carr, Washington, D. C., for Marshall.

Before SNEED, HUG and SKOPIL, Circuit Judges.

HUG, Circuit Judge:

This is a consolidated appeal of two judgments by the district court. First, M & R Investment Co., Inc. (M & R) appeals the dismissal of its action for specific performance and damages for breach of contract by the Trustees of the Central States, Southeast and Southwest Areas Pension Fund (Trustees). The district court's decision is reported at *M & R Investment Co., Inc. v. Fitzsimmons*, 484 F.Supp. 1041 (D.Nev.1980) (hereinafter *M & R v. Fitzsimmons*). Second, Trustees appeal a summary judgment denying them costs and attorneys' fees under the Employee Retirement Income Security Act of 1974 (ERISA), section 502(g), 29 U.S.C. § 1132(g). We affirm the district court's disposition in each instance. We address M & R's appeal first.

## I

### BACKGROUND AND FACTS

This appeal presents a convoluted set of facts that the district court sorted out with considerable patience. *M & R v. Fitzsimmons*, 484 F.Supp. at 1044–53. Because the parties have not demonstrated that any of those findings of fact are clearly erroneous, we affirm them and incorporate them into this opinion.

There are four events critical to our discussion of M & R's appeal: First, on December 12, 1974, M & R presented to Trustees, in letter form, an application for a $40 million loan; Second, in January, 1975, Trustees issued a commitment letter accepting the application and, after amending its terms, approving the loan; Third, on March 10, 1975, M & R accepted the loan agreement, as amended by Trustees; and Fourth, in June, 1976, Trustees voted to rescind the loan agreement because they had concluded it was prohibited under ERISA.

ERISA prohibits loans from a covered pension fund to a party in interest. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).[1] At the time the loan agreement was entered into, M & R was a party in interest because its parent corporation also owned a third entity, which was an employer contributing to the fund. This connection with a fund participant was sufficient to make M & R a party in interest[2] and, therefore, ineligible to receive loans from the fund.

The ERISA loan prohibition applies to any contract entered into after January 1, 1975,[3] but not to a binding contract in existence prior to July 1, 1974.[4]

---

1. Section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), reads:

    (a) Except as provided in section 1108 of this title:
    (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

    . . . . .

    (B) lending of money or other extension of credit between the plan and a party in interest;
    . . . .

2. Section 3, 29 U.S.C. § 1002, reads in pertinent parts:

    (14) The term "party in interest" means, as to an employee benefit plan—

    . . . . .

    (C) an employer any of whose employees are covered by such plan;

    . . . . .

    (E) an owner, direct or indirect, of 50 percent or more of—
    (i) the combined voting power of all classes of stock entitled to vote or the total

value of shares of all classes of stock of a corporation.

. . . . .

which is an employer or an employee organization described in subparagraph (C) or (D);

. . . . .

(G) a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of—
(i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation,

. . . . .

is owned directly or indirectly, or held by persons described in subparagraph (A), (B), (C), (D), or (E);
. . . .

3. Section 414(a), 29 U.S.C. § 1114(a) reads:

    (a) Except as provided in subsections (b), (c), and (d) of this section, this part shall take effect on January 1, 1975.

4. Section 414(c)(1), 29 U.S.C. § 1114(c)(1) reads:

## II

## M & R'S APPEAL.

M & R relies on three grounds in its appeal: (1) the loan contract existed prior to July 1, 1974; therefore, the ERISA transition provision applies, and the loan is not prohibited; (2) M & R's parent sold the subsidiary, which caused the party-in-interest problem, prior to the disbursal date in the loan agreement; therefore, the impediment to the loan was removed prior to any "lending of money," and the statutory prohibition does not apply; and (3) Trustees violated their implied contractual duty to cooperate by not adequately pursuing an administrative exemption to the statutory prohibition.

### A. *Loan Date*

■ M & R contends that the district court erroneously found that the loan contract became binding with the March 10, 1975 delivery of acceptance and service fee. Instead, it argues that because of the extensive oral negotiations in early 1974, and Trustees' custom of using binding oral commitments, an enforceable loan contract existed before July 1, 1974. As a result, the ERISA transition rule,[5] granting a ten-year exemption from the prohibited transaction rules, should have been applied.

M & R's argument is without merit. It is difficult to conceive how those early oral negotiations could have constituted a binding contract. It is clear that major amendments in the terms of the loan were made between M & R's formal application in December, 1974, and Trustees commitment letter in January, 1975. For example, the commitment letter added the requirement

that the loan be guaranteed by Morris Shenker[6] and by M & R's corporate parent. *See M & R v. Fitzsimmons*, 484 F.Supp. at 1046–49.

M & R presented no credible evidence that either party considered itself bound to a loan contract until well after the July 1, 1974, statutory deadline. In fact, M & R's conduct during the entire period of time in question was wholly inconsistent with the argument it now makes on appeal. *Id.*

M & R also contends that the loan was enforceable before July 1, 1974, because it was part of a separate February 1974 agreement, to which Trustees and Shenker were parties, that settled a conflict concerning loans to Shenker's other companies. However, that agreement makes no mention of the loan at issue here, and it has an integration clause that precludes M & R from combining the transactions. The district court properly rejected M & R's contentions on this issue. *M & R v. Fitzsimmons*, 484 F.Supp. at 1058–59.

In short, M & R has failed to demonstrate error by the district court in its conclusion that no binding contract existed until after ERISA became fully effective.

### B. *Removal of ERISA Impediment by Sale of Subsidiary.*

■ M & R contends that because its parent disposed of the subsidiary that created the party-in-interest impediment, the loan transaction was not prohibited by ERISA. M & R posits that its change in status cleansed the loan of the party-in-interest element.

---

(c) Section 1106 and 1107(a) of this title (relating to prohibited transactions) shall not apply—

    (1) until June 30, 1984, to a loan of money or other extension of credit between a plan and a party in interest under a binding contract in effect on July 1, 1974 (or pursuant to renewals of such a contract), if such loan or other extension of credit remains at least as favorable to the plan as an arm's-length transaction with an unrelated party would be, and if the execution of the contract, the making of the loan, or the exten-

sion of credit was not, at the time of such execution, making, or extension, a prohibited transaction (within the meaning of section 503(b) of Title 26 or the corresponding provisions of prior law).

**5.** *See* note 4.

**6.** Morris A. Shenker had been M & R's representative throughout the loan negotiations. At the time these events took place, he also was a major owner of M & R's parent corporation.

We do not decide whether the disposal of the subsidiary was a bona fide sale or, assuming it was, whether following the sale, the parties could have rescinded the loan contract and negotiated a new one and been in compliance with ERISA. Instead, we hold that even if the disposal of the impeding subsidiary were sufficient to break the party-in-interest chain, the fact that the contract already existed at the time of the divestiture vitiates the effect of any attempted change in the parties' status under ERISA.

The basis of M & R's argument on this issue lies in the language of the prohibited transactions section of ERISA.[7] That section prohibits a transaction constituting a direct or indirect "lending of money or other extension of credit between the plan and a party in interest . . . ." M & R contends that because the loan proceeds were never disbursed, there has not been a "lending of money," and ERISA has not been violated. It argues that the loan contract is a separate part of the transaction not prohibited by ERISA.

We reject this interpretation because it ignores the realities of contractual transactions, and it would clear the way for exactly the kind of abuses ERISA is intended to prevent.

The contention that the contract to loan is not a transaction barred by ERISA and is severable from the disbursement of funds is unsupportable in the context of this case. The disbursal procedures are set out in the loan agreement. The contract prevents disbursement prior to June 1, 1976, and requires it to have commenced by June 30, 1976. Specific and detailed instructions setting out the disbursement rules are included in the contract. Disbursement has no meaning for these parties without the terms set out in the contract. There is no

merit to the argument that this contractually created right is severable from the contract that created it. *M & R v. Fitzsimmons*, 484 F.Supp. at 1057.

Moreover, to allow the severing that M & R requests would undercut the statutory purpose of ERISA. Congress enacted ERISA in order to protect pensions and other delayed compensation for the benefit of employees. *See Wadsworth v. Whaland*, 562 F.2d 70, 73–74 (1st Cir. 1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978). The party-in-interest prohibitions act to insure arm's-length transactions by fiduciaries of funds subject to ERISA. A transaction with a party in interest is prohibited under the presumption that it is not arm's-length. The result is a broad per se prohibition of transactions ERISA implicitly defines as not arm's-length. *See Cutaiar v. Marshall*, 590 F.2d 523, 528–29 (3d Cir. 1979). Yet M & R would have us ignore the fact that the contract was negotiated and agreed upon while the prohibited relationship existed. We are asked to focus instead on the basically ministerial act of disbursing the funds.

As we have already noted, disbursement is meaningless without reference to the contract. The culpability arises with the contract's creation; it cannot be eliminated by merely dissolving the improper relationship prior to the contract's execution. We hold that the "lending of money" prohibition of section 406(a)(1)(B) of ERISA makes the loan transaction before us illegal and, therefore, unenforceable.

## C. *Trustees' Duty to Cooperate*

■ Finally, M & R contends that if Trustees had reasonably pursued an administrative exemption to the ERISA party-in-interest prohibition,[8] the contract might

---

7. *See* note 1.

8. Section 408(a), 29 U.S.C. § 1108(a) reads:
   (a) The Secretary shall establish an exemption procedure for purposes of this subsection. Pursuant to such procedure, he may grant a conditional or unconditional exemption of any fiduciary or transaction, or class of fiduciaries or transactions, from all or part

of the restrictions imposed by sections 1106 and 1107(a) of this title. Action under this subsection may be taken only after consultation and coordination with the Secretary of the Treasury. An exemption granted under this section shall not relieve a fiduciary from any other applicable provision of this Act.

have been enforceable. It argues that if the Secretary of Labor had been given an adequate opportunity to review the loan, an exemption might have been granted and the loan executed. Thus, M & R concludes, Trustees breached their implied contractual duty to cooperate when they withdrew their administrative inquiries after receiving preliminary indications that an exemption would not be granted. M & R contends that the contract would have been enforceable absent Trustees' breach and, thus, that breach makes damages available to M & R as the injured party. Again, M & R's position is without merit.

While it is true that an implied duty to cooperate does exist, *see generally,* 11 Williston on Contracts § 1295 (3d ed. 1968), we decline to place the burden of that duty entirely on Trustees when M & R was equally able to pursue an exemption.[9] *M & R v. Fitzsimmons,* 484 F.Supp. at 1051–52, 1053, 1058. M & R presents no evidence that Trustees should have believed that an exemption would have been granted if the issue had been pressed. As a result, we cannot conclude that Trustees' conduct interfered with performance of the contract. In addition, Trustees did not breach any duty to cooperate with any effort by M & R to obtain an exemption; M & R made no such effort. We reject M & R's contentions, and affirm the district court on this issue. *M & R v. Fitzsimmons,* 484 F.Supp. at 1058.

### D. *Conclusion on M & R's Appeal.*

Because the loan contract is a prohibited transaction under the terms of ERISA, it is unenforceable. M & R has not met its burden on appeal. The district court's judgment is affirmed.

## III

### TRUSTEES' APPEAL

Trustees appeal the district court's unpublished decision not to award them attorneys' fees as allowed by ERISA section 502(g).[10] That section gives the district court the authority to award attorneys' fees, at its discretion, in an "action . . . by a participant, beneficiary, or fiduciary" of a fund covered by ERISA. The district court properly ruled that this action by M & R was not "by" a participant, beneficiary, or fiduciary, and therefore found that the attorneys' fees section does not apply. There is no ambiguity in the wording of the section 502(g). Perhaps if Congress had considered the situation we are faced with, it might have written the statute differently. However, it did not, and it is not within our power to amend the clear language of the statute.

Trustees also contend that they are entitled to attorneys' fees in equity because M & R brought its suit in bad faith. While it is true that the suit has little merit, it cannot be labeled "in bad faith" unless is has no valid basis. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700–701, 54 L.Ed.2d 648 (1978). The district court declined to make such a finding, and Trustees' generally circumstantial showing of bad faith does not persuade us that the district court clearly erred. *See*

The Secretary may not grant an exemption under this subsection unless he finds that such exemption is—
    (1) administratively feasible,
    (2) in the interests of the plan and of its participants and beneficiaries, and
    (3) protective of the rights of participants and beneficiaries of such plan.
Before granting an exemption under this subsection from section 1106(a) or 1107(a) of this title, the Secretary shall publish notice in the Federal Register of the pendency of the exemption, shall require that adequate notice be given to interested persons, and shall afford interested persons opportunity to present views. The Secretary may not grant an exemption under this subsection from section 1106(b) of this title unless he affords an opportunity for a hearing and makes a determination on the record with respect to the findings required by paragraphs (1), (2), and (3) of this subsection.

9. The exemption procedures allow "any party in interest . . . who is or may be a party to the prohibited transactions" to apply for an exemption. 40 Fed.Reg. 18471 (§ 3.02(1) of exemption procedures) (April 28, 1975).

10. 29 U.S.C. § 1132(g).

*Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1298 (9th Cir. 1982).

Therefore, we affirm the district court's ruling that ERISA section 502(g) is inapplicable to this case, and that the action was not brought in bad faith. Attorneys' fees were properly denied.

## IV

## CONCLUSION

M & R's appeal is without merit. The district court's opinion, as reported at 484 F.Supp. 1041, is AFFIRMED. The district court's denial of attorneys' fees to Trustees under both theories presented is also AFFIRMED.