**Robert T. METZ, Plaintiff–Appellant,**

v.

**INDEPENDENT TRUST CORPO-RATION, an Illinois corpora-tion, Defendant–Appellee.**

No. 92–1653.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1993.

Decided June 2, 1993.

---

Michael Sweig Mendelson (argued), Jay H. Mittelstead, Jr., McConnell & Mendelson, Chicago, IL, for plaintiff-appellant.

Alexander R. Domanskis, Jeffrey S. Dunlap, Ross & Hardies, Rick Allen White (argued), Chicago, IL, for defendant-appellee.

Before BAUER, Chief Judge, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant Robert Metz sued the defendant-appellee Independent Trust Corporation ("Intrust") for breach of trust in federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332 (1988). The district court entered summary judgment in favor of Intrust on February 20, 1992. The plaintiff filed a timely notice of appeal. We affirm.

## I. BACKGROUND

Robert Metz, a Connecticut resident, is a former *Wall Street Journal* reporter and author of *Black Monday: The Catastrophe of October 19, 1987 ... and Beyond* (1988), a book on the stock market crash of 1987. While conducting research for his book, Metz became acquainted with Scott Serfling who was the president and the sole shareholder of Serfling & Associates, Incorporated ("SAI"), an Illinois Investment Company. Serfling and SAI were registered with the Commodity Futures Trading Commission ("CFTC") in Chicago, Illinois. Serfling represented himself to Metz as a "guru" at the Chicago Mercantile Exchange and as an experienced financial advisor formerly employed with Merrill–Lynch, E.F. Hutton, and Smith–Barney.

In November 1989, Serfling contacted Metz about investing some money through SAI. Shortly thereafter, the National Futures Association ("NFA") revoked Serfling's and SAI's CFTC registration noting that Serfling had a history of prior misconduct. The NFA concluded that Serfling was incap-

able of being a fiduciary and that it was quite likely he would engage in future fraudulent and dishonest acts. Serfling failed to disclose to Metz of the NFA's December 4, 1989 decision to revoke his registration.

Pursuant to Serfling's instructions, Metz withdrew $360,850 from an account in New York, and on December 21, 1989 endorsed the $360,850 check to Intrust (an Illinois corporation) with instructions to create a 60–day rollover Individual Retirement Account ("IRA") in Metz' name. In addition to the check, the plaintiff-appellant Metz completed and mailed to Intrust (1) a signed IRA Adoption Agreement, (2) an incomplete Investment Direction Form (naming Serfling as his investment advisor), (3) a Private Corporate Obligation/Promissory Note Authorization (permitting Serfling to borrow the $360,850), (4) a check for $90.00 (establishing the IRA rollover account and paying the annual fee), and (5) an IRA rollover deposit authorization/election form. Intrust received these documents on December 29, 1989 and accepted its appointment as trustee of Metz's IRA. On December 30, 1989 Intrust received a completed Investment Direction form from Metz. At about the same time, Serfling executed a promissory note assuring repayment of the $360,850 to Metz within one year. A short time thereafter, Serfling arrived at Intrust to withdraw the $360,850 from Metz' account. The in-house counsel for Intrust, David Wierenga, observed an uneasiness about Serfling and inquired of Metz by telephone whether he still wanted to permit the transaction. Metz assured Wierenga that he wanted the transaction to proceed. Intrust released the funds to Serfling who absconded with it and remains at large. On September 11, 1990, Metz filed this lawsuit against Serfling and Intrust. Counts I and II have been dismissed without prejudice because of Metz' inability to serve process on Serfling. Count III alleges that Intrust breached a fiduciary duty under the Illinois prudent person rule in failing to determine Serfling's background before releasing trust funds to him. Count IV alleges that due to Intrust's breach of fiduciary duty the IRA adoption agreement should be rescinded and Intrust should return the $360,850 to Metz. Count V seeks to revoke the trust under the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½ ¶¶ 262, 312(12).

## II. ISSUES

Metz raises three arguments on appeal: (1) that the exculpatory provisions violate Illinois and federal public policy; (2) that the trust agreement did not authorize Intrust to engage in a prohibited transaction in violation of the Internal Revenue Code, 26 U.S.C. § 4975; and (3) that Intrust had a duty to disclose to Metz that the loan to Serfling was a prohibited transaction.

## III. DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." We review a grant of summary judgment *de novo* and consider the record in the light most favorable to the party opposing the motion. *Rizzo v. Caterpillar, Inc.*, 914 F.2d 1003, 1006 (7th Cir.1990). "We apply the same standard as the district court and affirm the summary judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Edwards v. Massachusetts Mutual Life Ins. Co.*, 936 F.2d 289, 291 (7th Cir. 1991). Only when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party does a genuine issue of material fact exist." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. What Authority did Intrust Possess under the Trust?

■ Metz is claiming that Intrust exceeded its authority as trustee by authorizing a prohibited transaction, in violation of the Internal Revenue Code § 4975. 26 U.S.C. § 4975 (prohibiting a loan from a plan to a fiduciary or one who provides investment advice for the plan). Initially, we must de-

termine the parameters of Intrust's authority regarding the funds, and then whether Intrust exceeded the scope of this authority. The beginning point of our analysis is the Trust Agreement itself for,

"[t]he authorities are as one in holding that a trust itself constitutes the charter of the trustee's powers and duties. 'From it he derives the rule of his conduct, and it not only prescribes the extent and limit of his authority but also furnishes the measure of his obligations....' ... 'A trustee ... must look to the terms of the instrument itself for a determination of his duties and is entitled to act only within the scope of the powers granted; he has no right to perform any acts extraneous to his trust or beyond his authority as granted therein.'"

*Harris Trust & Sav. Bank v. Wanner,* 326 Ill.App. 307, 61 N.E.2d 860, 863 (1945) (citations omitted). Thus the Trust Agreement defines the powers Metz granted to Intrust. The court's role in interpreting a trust is clear:

"[t]he limits of a trustee's powers are determined by the plain and unambiguous language of the instrument creating the trust.... Moreover, the court's role is limited to establishing not what the settlor meant to say, but what was meant by what he did say.... As the Illinois Court of Appeals stated, 'The court's function, therefore, is not to modify the trust or to create new terms different from those to which the parties have agreed.'"

*Dunker v. Reichman,* 841 F.2d 177, 180 (7th Cir.1988) (citations omitted). We will examine the trust before us in light of the principles set forth in *Harris Trust* and *Dunker.* The defendant's Trust Agreement provides that "the Trustee [Intrust] is hereby authorized and empowered: ... to invest and reinvest the trust funds at the direction of the Grantor or his authorized agent...." Article IV, ¶ 1. Regarding the investment of the account,

"the Grantor [Metz] has the sole authority and discretion, fully and completely, to select and direct the investment of all assets in his Account. The Grantor accepts full and sole responsibility for the success or failure of any selection made.... The

Trustee [Intrust] will not act as an investment advisor to a Grantor and shall not have any duty to question the Grantor's or his authorized agent's directions regarding the purchase, retention or sale of any asset."

Art. V. ¶¶ 1, 3. In addition to the sections of the Trust Agreement limiting Intrust's power, Article XI contains a "hold harmless" provision in which

"the Grantor agrees to hold the Trustee harmless from all liabilities and expenses incurred in connection with any actions taken or failures to act in reliance upon the Grantor's or his authorized agent's written instructions, designations, and representations, or in the exercise of any right, power, or duty of the Trustee in good faith and with reasonable care."

Art. XI.

Considered collectively, the provisions of the Trust Agreement clearly establish that Intrust was a nondiscretionary trustee who was merely obligated to follow the directives of Metz and/or his agent (Serfling). *See Commodity Futures Trading Comm. v. Heritage Capital Advisory Services,* 823 F.2d 171, 173 (7th Cir.1987) (Holding that "only a broker operating a discretionary account—in which the broker determines which investments to make—is viewed as a fiduciary"). Our conclusion that Intrust was a nondiscretionary trustee is supported by the other documents detailing the relationship between Metz and Intrust. In the IRA Adoption Agreement, Metz stated:

"I [Metz] acknowledge that it is my sole responsibility to direct the investment of the assets of my IRA and *the TRUSTEE shall have no liability for any loss, damage, or tax, including a prohibited transaction tax or plan disqualification tax, resulting from transactions executed by the TRUSTEE based on directions received from me or my Investment Advisor.* I agree to hold the TRUSTEE harmless for its actions hereunder which were directed by me or my investment advisor and will indemnify the TRUSTEE for any and all claims and costs arising from transactions executed by the TRUSTEE based on directions received from me or my In-

vestment Advisor, including, but not limited to, court costs, attorneys' fees and other expenses incurred...."

(Emphasis· added). In the Investment Direction, Metz further declared:

"I [Metz] hereby acknowledge that I have reviewed all pertinent information relating to the above transaction(s) ... that I meet the specified suitability requirements; and *that this investment does not constitute a Prohibited Transaction as defined in Internal Revenue Code § 4975.* I further acknowledge that I have read and I agree to abide by the terms, conditions, and limitations concerning permitted investments and other statements contained on the reverse side hereof and any other supporting documents now existing, or as determined necessary from time to time by the TRUSTEE."

(Emphasis· added). Finally, Metz made the following representations in a Private Corporate Obligation/Promissory Note Authorization:

"(b) That I [Metz] have investigated the maker of the promissory note or corporate obligation and have reasonably concluded that the maker is of sufficient financial strength to repay the note.

(c) That this investment is not a 'party in interest' transaction and does not constitute a prohibited transaction as defined by Internal Revenue Code § 4975.

(d) That I understand that Independent Trust Corporation has not evaluated or given any advice with respect to this investment.

(e) That I understand that Independent Trust Corporation shall be under no obligation to notify me in the event of a default in the repayment of the note or obligation and that it shall be my sole responsibility at my expense or at the expense of the plan, to obtain legal or other necessary services in connection therewith. I agree to indemnify and hold Independent Trust Corporation harmless from any claim which may be made by reason of this investment.

(f) I agree that I will immediately notify Independent Trust Corporation in the event any of the foregoing representations are no longer true.

.    .    .    .    .

The undersigned states that he has read and agrees to the foregoing requirements and has initialed [each] paragraph[ ]...."

Against this background of disclaimers, hold harmless provisions, and full acceptance of liability and responsibility by Metz, he boldly proclaims that Intrust breached its fiduciary duty in failing to inform him that the loan of trust funds to Serfling violated the Internal Revenue Code.

### B. Does Public Policy Invalidate the Exculpatory Language?

■ Initially, Metz argues that the exculpatory clauses in the Trust Agreement and accompanying documents are invalid and unenforceable because of federal public policy and Illinois public policy. Metz asserts that federal public policy established in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.· § 1110(a), prevents a trustee from exculpating itself from liability. Metz concedes, however, that his IRA is not even governed by ERISA. Appellant's Brief at 11; *see also* 29 U.S.C. § 1103(b)(3)(B) (excluding Individual Retirement Accounts from the fiduciary responsibilities enumerated in ERISA). Even if Metz' IRA were governed by ERISA, § 1105(d) exempts the trustee from liability when an investment manager has been appointed. In such a case "no trustee shall be· liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage ·any asset of the plan which is subject to the management of such investment ·manager." *Id.* § 1105(d)(1). Thus Metz's argument that ERISA establishes a federal public policy against exculpatory clauses must fail. Metz also relies on *M & R Investment Co. v. Fitzsimmons,* 685 F.2d 283, 287 (9th Cir.1982), in support of his argument that federal public policy bars exculpatory clauses. *Fitzsimmons* is distinguishable from the case before us because it involved a trust fund governed by ERISA. As we have just stated, Metz's IRA is not governed by ERISA. Accordingly, *Fitzsimmons* (an ERISA case) lacks support for

Metz's allegation that federal public policy invalidates the exculpatory clauses. Thus Metz has failed to demonstrate either in ERISA or through case law the existence of a federal public policy invalidating the exculpatory clauses.

We will now address Metz's argument that Illinois public policy invalidates the exculpatory clauses in question. Metz fails to cite any Illinois case law but he asserts that the Illinois "prudent person" standard prohibits enforcement of the exculpatory clause. The Illinois Trusts and Trustees Act states,

**1675. Investments—Prudent man rule**

(2) Subsection (1) [the prudent man rule] *shall not be construed as authorizing or requiring any departure from, or variation of, the express terms or limitations set forth in any trust instrument* or court order creating or defining the trustee's investment powers or duties, but as used in the instrument the terms "legal investment", "authorized investment" or words of similar import shall mean any investment permitted by subsection (1).

Illinois Trust & Trustees Act, Ill.Rev.Stat., ch. 17, ¶ 1675 (1989) (emphasis added). Subsection 2 clearly states that the prudent man rule is not to alter the "*express* terms" of the trust including "limitations." *Id.* We read the statute to mean that exculpatory clauses are compatible with the prudent person rule. Our interpretation of the statute is confirmed by the fact that the Illinois courts have expressly upheld exculpatory clauses in trust agreements.

"Although exculpatory provisions . . . do not enjoy special favor in the law, *if they are inserted in a trust instrument they are generally held effective* except as to breaches of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary."

*Axelrod v. Giambalvo,* 129 Ill.App.3d 512, 84 Ill.Dec. 703, 707, 472 N.E.2d 840, 844 (1984) (emphasis added); *MAJS Investment, Inc. v. Albany Bank & Trust Co.,* 175 Ill.App.3d 478, 124 Ill.Dec. 918, 920, 529 N.E.2d 1035, 1037 (1988). We fail to understand how Metz can succeed in his argument that Illinois public policy invalidates an exculpatory clause when Illinois courts have expressly

upheld such clauses in trust instruments. We are of the opinion that the Illinois Trusts and Trustees Act as well as case law mandate judicial enforcement of a clear and unambiguous exculpatory clause in a trust agreement unless the claimant demonstrates "bad faith" or "reckless indifference" on the part of the defendant. *See Axelrod,* 84 Ill. Dec. at 707, 472 N.E.2d at 844; *MAJS Investment, Inc.,* 124 Ill.Dec. at 920, 529 N.E.2d at 1037. Metz has failed to direct us to any authority to the contrary, thus, based on the record before us, we hold that neither federal nor state public policy serves to invalidate the exculpatory in the defendant's trust instrument.

*C. Did the Trust Create a Duty on the part of Intrust to Disclose when a Transaction Violates the I.R.C.?*

■ Metz argues that Article VI of the Trust Agreement, "Other Administrative Powers and Duties of the Trustee," supports his claim that Intrust breached a duty. The Trust Agreement reads:

"The Trustee may perform any and all other acts which in its judgment may be necessary or appropriate for the proper and advantageous management, investment and distribution of the trust assets *excepting such acts as are prohibited under the Internal Revenue Code* and regulations regarding Individual Retirement Accounts and the provisions of the Employment Retirement Income Security Act of 1974, as amended from time to time."

Art. VI, ¶ 4 (emphasis added). Metz contends that the IRA Adoption Agreement, the Promissory Note and the Promissory Note Authorization revealed his intent to loan money from his IRA to his investment advisor and fiduciary (Serfling). Therefore, once Intrust possessed the three documents it knew that the transaction violated the Internal Revenue Code and it was a breach of Intrust's duty of good faith not to inform Metz of the prohibited transaction.

Metz contends that Internal Revenue Code § 4975 prohibited the loan from the trust to Serfling because Serfling was a "disqualified person" as he had a fiduciary relationship with Metz regarding the trust. The Internal

Revenue Code provides the following definitions of pertinent terms:

**(c) Prohibited transactions.—**

(1) **General Rule.**—for purposes of this section, the term "prohibited transaction" means any direct or indirect—

\*   \*   \*   \*   \*   \*

(B) lending of money or other extension of credit between a plan and a disqualified person;

**(e) Definitions.—**

(2) **Disqualified Person.**—For purposes of this section, the term "disqualified persons" means a person who is—

(A) a fiduciary;

(B) a person providing services to the plan;

(3) **Fiduciary.**—For purposes of this section, the term "fiduciary" means any person who—

(A) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

(B) renders *investment advice* for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so,

(C) has any discretionary authority or discretionary responsibility in the administration of such plan.

I.R.C. § 4975(c)(1)(B), (e)(2)(A), (B), (e)(3)(A)–(C) (emphasis added).

Intrust maintains that even if the loan to Serfling violated I.R.C. § 4975 that the exculpatory clauses in the Trust Agreement, the Investment Directive, the Promissory Note Authorization, and the IRA Adoption Agreement clearly disclaim any liability on the part of Intrust. Specifically, Intrust points to the Promissory Note Authorization where Metz not only signed the document but initialed the paragraph stating *"that the investment is not a 'party in interest' transaction and does not constitute a prohibited transaction as defined by Internal Revenue Section 4975."* (Emphasis added). Metz's representation that the loan to Serfling was

not a prohibited transaction coupled with the "hold harmless" provision of the Trust Agreement results in only one conclusion: that Intrust was not liable for allowing the loan to Serfling.

The Restatement (Second) of Trusts § 216 reinforces our conclusion that Intrust did not breach a duty owed to Metz:

"§ 216. Consent of Beneficiary.

(1) Except as stated in subsections (2) and (3), a beneficiary cannot hold the trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary prior to or at the time of the act or omission consented to it.

(2) The consent of the beneficiary does not preclude him holding the trustee liable for a breach of trust, if . . .

(b) The beneficiary, when he gave his consent, did not know of his rights and of the material facts which the trustee knew or should have known and which the trustee did not reasonably believe that the beneficiary knew; or

(c) The consent of the beneficiary was induced by improper conduct of the trustee."

Restatement (Second) of Trusts § 216 (1959). In the Comment to subsection (1) the editors of the Restatement offer an illustration which is dispositive of the case at hand.

"A is trustee of $100,000 for B. By the terms of the trust A is directed to invest only in bonds. *B requests A to invest in shares of stock and A does so.* The shares fall in value. *B cannot hold A liable for breach of trust."*

Illustration (No. 1) (emphasis added). Illinois law echoes the principle enunciated in the Restatement that a beneficiary may not direct the trustee to act and then hold the trustee liable for that very act.

"As a general rule, a trustee is personally liable for any loss or damage occasioned to the trust property by a violation of his trust, although he may be relieved from such liability where the cestui que trust [i.e. beneficiary] consents to such violations or acquiesces, confirms, or ratifies such violation. In order to bind a cestui que trust by acquiescence in a breach of trust

by the trustee, the cestui que trust must be shown to have acted freely, deliberately, and advisedly, with the intention of confirming a transaction which he knew, or should have known, to be impeachable." *In re Hartzell's Will*, 43 Ill.App.2d 118, 192 N.E.2d 697, 706 (1963). Metz attempts to argue that the trustee has a duty to inform the beneficiary based on the language that "the cestui que trust must be shown to have acted freely, deliberately, and advisedly...." He claims that because Intrust failed to inform him that the loan to Serfling violated I.R.C. § 4975, he did not act "freely, deliberately, and advisedly." We disagree with this reading of the case because the requirement that Metz act "freely, deliberately, and advisedly" only arises in the case of "acquiescence" and not in the case of where the beneficiary "consents ... confirms, or ratifies" the transaction. *Id.* ("In order to bind a cestui que trust by ∙ *acquiescence* in a breach of trust by the trustee, the cestui que trust must be shown to have acted freely, deliberately, and advisedly....") (emphasis added). In the present case, Metz not only "consented" to the transaction he *initiated* and *authorized* it. In fact, he was the only one who had the power under the Trust Agreement to authorize the transaction. Just as the illustration from the Restatement of Trusts § 216 states that the beneficiary cannot hold the trustee liable for a breach of trust when the beneficiary requests the investment, Metz may not hold Intrust liable for breach of trust because Metz directed the loan to Serfling.

### D. Did Intrust have a Duty to Speak?

■ Finally, Metz argues that as a matter of law, Intrust should have refused to loan the trust assets to Serfling because Intrust had a duty to inform Metz that the loan violated I.R.C. § 4975 even though Metz had signed a statement attesting that the transaction was not in violation of I.R.C. § 4975. Metz relies on *Merchants Nat'l Bank v. Frazier*, 329 Ill.App. 191, 67 N.E.2d 611, 619 (1946), to support his claim that Intrust had a duty to speak. In *Frazier* the court held that a beneficiary's acquiescing in a trustee's act "amount[s] to nothing if his right to impeach is concealed from him, or if free

disclosure is not made to him of every circumstance which it is material for him to know." *Id.* Metz also relies on *In re Hartzell's Will*, 192 N.E.2d at 706 (holding that the beneficiary must have acted "freely, deliberately, and advisedly"), and on the Restatement (Second) of Trusts § 173, Comment d (1959), (imposing a duty on the trustee to "communicate to the beneficiary all material facts in connection with the transaction which the trustee knows or should know"). *Id.* *Frazier* is distinguishable from the case before us because in *Frazier*, the trustee *failed to inform* the beneficiary that certain investments made by the trustee failed to "conform[ ] to the requirements of the statute then in force ... enumerating the securities permissible for the investment of trust funds." *Frazier*, 67 N.E.2d at 618. In contrast, as we have already explained, Metz *initiated* the transaction in question and *authorized* Intrust to make it, thus Metz cannot hold Intrust liable. Similarly, *In re Hartzell's Will* only requires a beneficiary to act "freely, deliberately, and advisedly" when the beneficiary "acquiesces" not when the beneficiary has authorized the transaction as Metz did. *In re Hartzell's Will*, 192 N.E.2d at 706. Likewise the Restatement (Second) of Trusts § 216 explains that the beneficiary cannot hold the trustee liable for a transaction that the beneficiary "directed." *Id.* Thus we must reject the appellant's argument that Intrust had a duty to speak because Metz directed Intrust to make the loan to Serfling.

Common sense and logic also dictate the conclusion that Metz may not hold Intrust liable for following Metz's explicit direction to loan the trust funds to Serfling. Metz did not engage Intrust as an investment counsellor or tax adviser; Intrust merely served as a passive conduit of his IRA funds. *See Metz v. Serfling*, No. 90 C 5302, 1992 WL 23491, at \*6, 1992 U.S.Dist. LEXIS 1164, at \*15 (N.D.Ill. Feb. 5, 1992). The appellant asks the court to view this dispute as a classic case of *caveat emptor* where the investor must read the fine print in the Trust Agreement. We are unwilling to accept this characterization of the matter because it was Metz who exhibited explicit and unwavering

trust in Serfling, and when Serfling absconded with the $360,850, Metz attempted to shift the responsibility onto Intrust. Thus Metz's complaint falls on deaf ears.

The district court and the parties have seen fit to address the matter of whether Intrust's action in permitting the loan to Serfling was the proximate cause of Metz' injury. Based on our holding that as a matter of law Intrust cannot be held liable for a transaction that Metz authorized, we fail to see a need to discuss the question of proximate cause. Accordingly, the district court's grant of summary judgment in favor of the defendant is

AFFIRMED.