Robert GRUND, Susan Grund, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

DELAWARE CHARTER GUARANTEE & TRUST COMPANY d/b/a Principal Trust Company, and Principal Financial Group, Inc., Defendants.

No. 09 Civ. 8025.

United States District Court, S.D. New York.

May 26, 2011.

Lovell Stewart Halebian Jacobson LLP, by: Christopher Lovell, Esq., Zamansky & Associates LLC, by: Jacob H. Zamansky, Esq., New York, NY, for Plaintiffs.

Sidley Austin LLP, by: Joel S. Feldman, Esq., New York, NY, for Defendants.

## OPINION

SWEET, District Judge.

Defendants Principal Financial Group, Inc. ("Principal Financial") and Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company ("Principal Trust") (collectively, the "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Consolidated Amended Complaint ("CAC") filed by Plaintiffs Robert Grund, Susan Grund, Jeffrey Golden, Victoria Golden, Stephanos Papademetriou, Vaciliki Papademetriou, and Eleni Papademetriou ("Plaintiffs"), Upon the conclusions set forth below, the motion is granted in part and denied in part.

The Plaintiffs and the Defendants entered into Self–Directed Individual Retirement Trust Agreements ("SIRTA") to establish traditional individual retirement accounts ("IRAs"). The Plaintiffs directed

investment in the Westgate Fund which proved to be a Ponzi scheme operated by James Nicholson ("Nicholson"), At issue is the adequacy of the twenty-six claims set forth in the CAC, alleging breach of contract, negligence, breach of fiduciary duty, unjust enrichment, and violations of ERISA duties in its 229 paragraphs.

alleging breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, breach of contract, unjust enrichment, negligence, and conversion. The Defendants moved to dismiss the complaint, and on April 16, 2010 the Plaintiffs filed the CAC, The instant motion of the Defendants to dismiss the CAC was heard and marked fully submitted on December 8, 2010.

## I. *Prior Proceedings*

The Plaintiffs filed their putative class action complaint on September 18, 2009

The CAC alleges twenty-six claims for relief as follows:

| | |
|---|---|
| First Claim for Relief | Breach of Contract under Federal Law and Breach of Federally Imposed Duties to Hold Assets and Not Commingle. (CAC ¶¶ 119–132.) |
| Second | Ordinary and Gross Negligence under Federal Law. (CAC ¶¶ 133–138.) |
| Third | Breach of Fiduciary Duty under Federal Law and Breach of Fiduciary Duties Imposed by Federal Law. (CAC ¶¶ 139–143.) |
| Fourth | Unjust Enrichment and Restitution under Federal Law. (CAC 11 144–145.) |
| Fifth | Breach of Contract to Hold Assets and Not Commingle under State Law. (CAC ¶¶ 146–148.) |
| Sixth | Ordinary and Gross Negligence under State Law. (CAC ¶¶ 149–151.) |
| Seventh | Breach of Fiduciary Duty under State Law. (CAC ¶¶ 152–154.) |
| Eighth | Unjust Enrichment and Restitution under State Law. (CAC ¶¶ 155–156.) |
| Ninth | Ordinary and Gross Negligence under State Law (Failure to Furnish Statements). (CAC ¶¶ 157–159.) |
| Tenth | Breach of Fiduciary Duty under State Law. (CAC ¶¶ 160–162.) |
| Eleventh | Unjust Enrichment and Restitution under State Law. (CAC ¶¶ 153–165) |
| Twelfth | Breach of Contract to Provide Accurate Annual Accounting under State Law. (CAC ¶¶ 166–169.) |
| Thirteenth | Ordinary and Gross Negligence under State Law (Failure to Furnish Statements). (CAC ¶¶ 170–172.) |

| | |
|---|---|
| Fourteenth | Breach of Fiduciary Duty under State Law. (CAC ¶¶ 173–175.) |
| Fifteenth | Unjust Enrichment and Restitution under State Law, (CAC ¶¶ 176–178.) |
| Sixteenth | Breach of Contract under Federal law. (CAC ¶¶ 179–188.) |
| Seventeenth | Ordinary and Gross Negligence under Federal Law (Failure to Furnish Statements). (CAC ¶¶ 189–192.) |
| Eighteenth | Breach of Fiduciary Duty under Federal Law (Failure to Furnish Statements). (CAC ¶¶ 193–196.) |
| Nineteenth | Unjust Enrichment and Restitution under Federal Law. (CAC ¶¶ 197–198.) |
| Twentieth | Breach of Contract under State Law (Failure to Furnish Statements). (CAC ¶¶ 199–201.) |
| Twenty–First | Ordinary and Gross Negligence under State Law (Failure to Furnish Statements). (CAC ¶¶ 202–204.) |
| Twenty–Second | Breach of Fiduciary Duty under State Law. (CAC ¶¶ 205–207.) |
| Twenty–Third | Unjust Enrichment and Restitution under State Law. (CAC ¶¶ 208–210.) |
| Twenty–Fourth | Implied Right of Action under Federal Law Including Section 408 of the Internal Revenue Code. (CAC ¶ 211–216.) |
| Twenty–Fifth | Breach of Fiduciary Duty under ERISA. (CAC ¶¶ 217–223.) |
| Twenty–Sixth | Failure to Disclose under ERISA (29 USC § 1132). (CAC ¶¶ 224–229.) |

According to the CAC, the Plaintiffs entered into a standardized form contract for a self-directed IRA that was drafted by Defendants, which in turn was copied in part from a federal form contract created by the Internal Revenue Service ("IRS"). *See* IRS Form 5305A; CAC ¶¶ 48–50. The form, as promulgated by the IRS, sets forth a number of provisions which must be included to create a valid "Traditional Individual Retirement Custodial Account" under § 408 of the Internal Revenue Code ("IRC"). CAC ¶ 48. Under IRC § 408, the custodian/trustee has a duty to acquire and hold particular investments; to keep custody of investments; to refrain from commingling the investments of each account with any other property; to deposit assets of accounts requiring safekeeping in an adequate vault; to determine the assets held by it in trust and the value of such assets at least once in each calendar year and no more than 18 months after the preceding valuation; and to receive, issue receipts for, and safely keep securities, CAC ¶¶ 42, 46; *see* Treas. Reg. 1.408–2(e). The SIRTA, written by Defendants, was signed by Plaintiffs. Included in Defen-

dants' standard application booklet for an IRA was a form letter from the IRS which ensured that the IRA contract conformed to the rules and fiduciary standards established by IRC § 408. CAC ¶ 8.

According to the CAC, while Defendants were collecting fees from Plaintiffs for services which they allegedly failed to perform, they were allegedly permitting an unauthorized person, Nicholson, to take a percentage of the retirement money belonging to Plaintiffs. Plaintiffs believed that Defendants were upholding their contractual obligations, adhering to their duties as custodians/trustees, and protecting Plaintiffs' retirement money, and Defendants are alleged to have negligently failed to perform many of their contractual and fiduciary obligations. CAC ¶ 51.

Defendants are alleged to have failed to collect contributions directly from Plaintiffs, a practice which is inconsistent with industry standards, and failed to send invoices directly to their clients, instead sending them to Nicholson, again a practice inconsistent with industry standards. CAC ¶ 51. Plaintiffs allegedly only received invoices from Defendants, requesting that they pay for Principal Trust's trustee services, after Nicholson's arrest. *Id.*

According to the CAC, Plaintiffs trusted Defendants to perform their duties as trustees/custodians of their IRA accounts but, instead of performing them, Defendants delegated much of the control over the IRA accounts to Nicholson. This delegation was undertaken despite Nicholson's background and the fact that he was not an eligible party to any of the necessary IRA contracts required by federal law for the management of IRA and pension funds. Although they were in a unique position as trustees to search the Securities and Exchange Commission's ("SEC") EDGAR databases and other state and federal databases, Defendants allegedly failed to discover that none of Nicholson's purported investment vehicles were registered or qualified for IRA and pension fund investment, failed in their fiduciary duties as trustees, and breached their contractual duties. CAC ¶ 69.

## II. *The Applicable Standard*

Fed.R.Civ.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

■ Therefore, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Plaintiffs must allege sufficient facts to "nudge [ ] their claims across the line from conceivable to plausible," *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

Under these standards the CAC is not short, concise, or plain and, by its repetitive format, a number of claims appear to be duplicative. (Def. Mem. in Supp. at 6). While dismissal on Rule 8(a)(2) grounds might be tempting, in an effort to minimize unnecessary motion practice, the adequacy of the claims will be considered in the following grouping, the federal claims, including the ERISA claims (Claims, First through Fourth, Sixteenth through Nineteenth, Twenty–Fourth through Twenty–Sixth), the contract claims (Fifth, Twentieth), the negligence claims (Sixth, Ninth,

Twentieth, Twenty–First), the breach of fiduciary duty claims (Seventh, Tenth, Fourteenth, Twenty–Second), and the unjust enrichment claims (Eighth, Eleventh, Fifteenth, Twenty–Third).

### III. *Principal Financial is Not Dismissed*

■ The Defendants have urged that the CAC contains no allegations that Principal Financial was involved in the transactions at issue. (Def. Mem. in Supp. at 9). Although the Plaintiffs seek to meet this contention by citing authorities relating to alter ego status, no such status is alleged in the CAC.

However, by footnoting 26 C.F.R. § 1.408–2(e)(5)(i)(A)(1), if that section has been incorporated into the contract as alleged above, "the owner or directors of the applicant will be responsible for the proper exercise of fiduciary powers by the applicant." This responsibility of Principal Financial is sufficient to defeat the Defendants' motion with respect to Principal Financial.[1]

### IV. *The Federal Claims Are Dismissed*

Plaintiffs have asserted claims for breach of contract, negligence, breach of fiduciary duty, unjust enrichment, and ERISA violations under federal law, based on ERISA, the establishment of the office of Employee Plans and Exempt Organizations, Section 408(a) of the Internal Revenue Code ("IRC") and the regulations thereunder precluding Form 5305A, and federal common law. (Pl. Opp. Mem. at 7–18.)

#### a. IRC Section 408 Does Not Provide a Private Right of Action

■ Initially, Plaintiffs have asserted that § 408 of the IRC provides a private right of action.

Although § 408 sets forth a series of statutory guidelines for IRAs seeking tax-deferred status, *see* 26 U.S.C. § 408, the Honorable Lewis Kaplan in a well-reasoned opinion recognized the limited scope of § 408: "Section 408 of the Code does no more than establish a framework whereby individuals may obtain favorable tax treatment . . . ." *Sirna v. Prudential Secs., Inc.,* No. 95 Civ. 8422, 95 Civ. 9016, 96 Civ. 4534, 1997 WL 53194, at *3 (S.D.N.Y. Feb. 10, 1997) (involving the alleged failure of an IRA trustee to properly manage beneficiary funds). Judge Kaplan dismissed as "frivolous" the plaintiff's argument that an IRA trustee's alleged failure properly to manage an account somehow "violated" § 408's tax deferral protocol:

> [T]here is nothing in the wording or effect of the statute to suggest that Congress intended to create, via the tax code, a private right of action against errant fiduciaries. When Congress did intend to create such private rights of action, it did so unambiguously, as in Title I of ERISA. Furthermore, actions for breach of fiduciary duty are traditionally matters of state law.

1997 WL 53194, at *3. He held that "there is no implied cause of action against allegedly errant IRA fiduciaries under Section 408 of the Internal Revenue Code." *Id.* *See also Reynolds v. de Silva,* No. 09 Civ. 9218, 2010 WL 743510, at *7 (S.D.N.Y. Feb. 24, 2010) ("there is no private right of action for violations of the IRC"); *Hines v. FiServ, Inc.,* No. 08 Civ. 2569, 2010 WL

---

1. Defendants have brought the order dismissing claims in *Mandelbaum v. Fiserv, Inc.,* 09 Civ. 752, 787 F.Supp.2d 1226, 1239–44, 2011 WL 1225549 at *9–12 (Mar. 29, 2011), to the Court's attention, in which claims against the parent company were dismissed. However, the *Mandelbaum* opinion does not consider 26 C.F.R. § 1.408–2(e)(5)(i)(A)(1).

1249838, at *2 (M.D.Fla. Mar. 25, 2010). The conclusions reached in *Sirna* are equally applicable here.

### b. Plaintiffs' ERISA Claims are Dismissed for Lack of Standing and Failure to State a Claim

██ Claims twenty-five and twenty-six allege that "[c]ertain of class members' accounts were pension or IRA accounts" and therefore give rise to claims for "breach of fiduciary duty" and "failure to disclose" under ERISA. CAC ¶¶ 217–229. If Plaintiffs could state a claim under ERISA, all twenty-four of their other claims would be preempted. Section 514(a) of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). The term "State law" includes not only "all laws, decisions, rules, regulations, or other State action having the effect of law," 29 U.S.C. § 1144(c)(1), but also state law breach of contract and tort claims involving an ERISA plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

██ Only plaintiffs who are properly considered "participants" or "beneficiaries" (or "fiduciaries") of an employee benefit plan have standing to sue under ERISA. *See Caltagirone v. N.Y. Cmty. Bancorp, Inc.*, 257 Fed.Appx. 470, 472 (2d Cir.2007); *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 433 F.3d 181, 200–01 (2d Cir.2005); *DaPonte v. Manfredi Motors, Inc.*, 157 Fed.Appx. 328, 331 (2d Cir. 2005) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004)). Therefore, in a putative class action, the named plaintiffs must properly allege facts establishing that they are ERISA "participants" or "beneficiaries" in order to survive a motion to dismiss. *See O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class.") (citations omitted). The CAC does not allege an ERISA "employee benefit plan," or that any of the named plaintiffs are "participants" in, or "beneficiaries" of, any such plan. Accordingly, the named Plaintiffs lack standing to sue under ERISA. *Caltagirone*, 257 Fed.Appx. at 473; *Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947, 951–54 (6th Cir.1990) (affirming dismissal of ERISA claim for lack of standing).

██ Moreover, IRA accounts like those Plaintiffs held are explicitly carved out of the scope of ERISA. *See* 29 U.S.C. § 1051(6) (exempting from coverage under Title I of ERISA "an [IRA] or annuity described in section 408 of [the Code]"); 29 C.F.R. § 2510.3–2(d)(1) ("For purposes of title I of [ERISA], the terms 'employee pension benefit plan' and 'pension plan' shall not include an [IRA] described in section 408(a) of the Code.") Courts have repeatedly held that ERISA does not apply to IRAs. *See, e.g., Rose v. The Long Island R.R. Pension Plan*, 828 F.2d 910, 913 (2d Cir.1987); *Charles Schwab & Co. v. Debickero*, 593 F.3d 916, 919 (9th Cir. 2010) ("IRAs are specifically excluded from ERISA's coverage" because IRAs involved "no employer oversight, no ongoing employer commitment, nor any potential for employer abuse").

Plaintiffs argue that this Court may not consider their lack of ERISA standing at this stage, but rather must wait until after class certification, relying on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119

S.Ct. 2295, 144 L.Ed.2d 715 (1999) and its progeny. (Pl. Opp. Mem. at 18). However, *Ortiz* is a "limited exception" and does not apply where the standing issue would exist for the named Plaintiff if they filed their claims alone and not as a class action. *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 319 & n. 6 (5th Cir.2002). Here, Plaintiffs have not alleged that there is any ERISA-covered employee benefit plan at issue, or that any named plaintiff was the beneficiary of such a plan. Therefore, Plaintiffs have failed to establish their standing under ERISA.

Plaintiffs also have not established any ERISA rights. Plaintiffs have sought to establish a private right of action under ERISA through the history and structure of the ERISA statute, ERISA Title I, Section 408, federal common law, the Erie Doctrine, and other legal principles.

■ Part of this invocation of ERISA is premised on a conflation of Title I and Title II of that statute. Title I of ERISA sets forth "rules for reporting and disclosure, vesting, participation, funding, fiduciary conduct, and civil enforcement" relating to "employee benefit plans,"[2] and explicitly carves out IRAs. Title II of "ERISA" consists of various amendments made to the Internal Revenue Code at the time of ERISA's passage, including § 408's provision of IRA guidelines. *See* 26 U.S.C. § 401 *et seq.*; 26 U.S.C. § 408. Title II does not give rise to an enforceable fiduciary duty claim, and, although technically part of the "ERISA statute," Title II is not generally what courts refer to when describing "ERISA claims." *See,*

*e.g.*, *Metz v. Indep. Trust Corp.*, 994 F.2d 395, 399–400 (7th Cir.1993) ("[Plaintiff's] IRA is not even governed by ERISA"); *In re Houck*, 181 B.R. 187, 191–92 (Bankr. E.D.Pa.1995) ("IRAs are tax qualified ... but they are not subject to ERISA").

The authorities the Plaintiffs cite do not hold to the contrary. *Investment Co. Inst. v. Conover*, 596 F.Supp. 1496 (D.D.C.1984), *Investment Co. Inst. v. Clarke*, 630 F.Supp. 593 (D.Conn.1986), and *Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397 (7th Cir.1985), do not hold that Title I of ERISA applies to IRAs, nor that Title II gives rise to actionable duties or a private right of action. *Conover* and *Clarke* were parallel actions seeking declaratory relief on the question of whether federally-regulated banks were permitted, under the Glass–Steagall Act, to establish discretionary, fiduciary "collective investment trusts." Because these factually distinguishable cases dealt with accounts the banks expressly intended to function as discretionary, "fiduciary" accounts, they are not relevant to the non-discretionary IRA accounts at issue here. *See Conover*, 596 F.Supp. at 1502; *Clarke*, 630 F.Supp. at 596–97. *Masi* also involved a discretionary IRA account, and, in any event, was limited by the Seventh Circuit's later decision in *Metz*, 994 F.2d at 402, which held that non-discretionary IRA custodians owe no duties beyond those defined in the parties' trust agreement. *Id.* at 398.

Plaintiffs cite the legislative history of the ERISA statute and contend that Congress's creation of the Office of Assistant

---

**2.** "Employee benefit plan" is defined under ERISA as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). A "participant" includes "any employee or former employee of an employer, or any member or former mem-

ber of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). Plaintiffs do not fall within this umbrella.

Commissioner, Employee Plans and Exempt Organizations in 1974 and amendment of § 408 in 1974 to include guidelines for tax-deferred IRAs indicates that Congress intended to create an IRA fiduciary duty, although no court decision has so held. This argument is unpersuasive and contradicted by the weight of authority cited above.

The ERISA claims are dismissed for lack of standing and failure to state a claim.

### c. Plaintiff's Federal Common Law Claims Fail

In addition to their federal statutory claims, Plaintiffs' CAC has added eight common law claims under "federal" law.

██ Plaintiffs' common law causes of actions are fundamentally creatures of state law. *See Data Probe Acquisition Corp. v. Datatab, Inc.,* 722 F.2d 1, 4 (2d Cir.1983) (fiduciary duty); *Caceres Agency, Inc. v. Trans World Airways, Inc.,* 594 F.2d 932, 934 (2d Cir.1979) (breach of contract); *Caggiano v. Pfizer Inc.,* 384 F.Supp.2d 689, 691 (S.D.N.Y.2005) (negligence). The circumstances in which it is appropriate to create federal rules of decision are "few and restricted," and limited to situations where there is a "significant conflict between some federal policy or interest and the use of state law." *Atherton v. F.D.I.C.,* 519 U.S. 213, 218, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) (citations and quotation marks omitted); *Resolution Trust Corp. v. Young,* 925 F.Supp. 164, 167–68 (S.D.N.Y.1996) (quoting *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994)); *see also F.D.I.C. v. Oldenburg,* 34 F.3d 1529, 1538 (10th Cir.1994) ("[s]tate law is presumed adequate" absent conflict) (citations omitted). *See also O'Melveny,* 512 U.S. at 87–88, 114 S.Ct. 2048 (finding that courts only apply federal law if it preempts state law, or if there is some conflict significant enough to warrant the creation of federal common law).

██ State law is preempted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, in only three circumstances: (1) where Congress expressly provides for preemption on a particular subject (*English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95–98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983))); (2) where Congress so thoroughly regulates conduct in a field that Congress implies that it intends the federal government to occupy the field exclusively ("field" preemption) (*English,* 496 U.S. at 79, 110 S.Ct. 2270); and (3) where state law "actually conflicts with federal law" ("conflict" preemption). *Id.; Niagara Mohawk Power Corp. v. Chevron USA, Inc.,* 596 F.3d 112, 138 (2d Cir.2010). "Absent clear congressional intent to the contrary, federal preemption of state law is not favored ... especially in areas of law traditionally occupied by the states." *Marsh v. Rosenbloom,* 499 F.3d 165, 177–78 (2d Cir. 2007) (citations omitted).

Plaintiffs have not alleged and cannot maintain that Congress expressly provided for preemption of all law relating to IRAs, nor that the "field" of IRAs is completely occupied by a federal regulatory scheme. Plaintiffs also do not allege any "conflict" between federal law and state law. Plaintiffs have alleged that identical state and federal law causes of action can co-exist in the same complaint. Plaintiffs have thus effectively conceded that there is no federal preemption here.

██ These same principles preclude Plaintiffs' argument that this Court should create new "federal common law," "'[T]here is no federal general common law.'" *O'Melveny & Myers,* 512 U.S. at 83,

114 S.Ct. 2048 (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). As noted above, the circumstances in which it is appropriate to create federal rules of decision are "few and restricted," and limited to situations where there is a "significant conflict between some federal policy or interest and the use of state law." *Atherton*, 519 U.S. at 218, 117 S.Ct. 666.

No basis has been established for the federal claims alleged, and they are dismissed.

## V. *Plaintiffs' State Law Claims Are Dismissed in Part and Survive in Part*

### a. Plaintiffs' State Law Claims Are Not Precluded By Federal Securities Laws

The enactment of the Securities Litigation Uniform Standards Act ("SLUSA") has created difficult issues for the courts, in particular the elasticity of the "in connection with" phrase relating to the purchase and sale of covered securities.[3] Distinguished judges of this circuit and others have reached differing conclusions in the factual settings with which they have been presented. For the reasons set forth below, the result here is closer to that reported in *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372 (S.D.N.Y.2010), and *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities*, 750 F.Supp.2d 450 (S.D.N.Y.2010), than the conclusions reached in *Levinson v. PSCC Services, Inc.*, No. 3:09 Civ. 00269, 2009 WL 5184363 (D.Conn. Dec. 23, 2009), *Mandelbaum*, 09 Civ. 752, 787 F.Supp.2d at 1244–50, 2011

WL 1225549, at *13–18[4], and *Barron v. Igolnikov*, No. 09 Civ. 4471, 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010).

Congress enacted the Private Securities Litigation Reform Act ("PSLRA") in 1995 to heighten pleading standards and strengthen procedural safeguards in an effort to stem the tide of abusive securities litigation. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81–82, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006); *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 249–50 (3d Cir.2009). After the PSLRA's enactment, however, plaintiffs sought to bring securities class actions under state, rather than federal, law. As the Second Circuit recognized: "By suing in state court under state statutory or common law, these litigants were able to assert many of the same causes of action, but avoid the heightened procedural requirements instituted in federal court." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107–08 (2d Cir.2001). In 1998, Congress enacted SLUSA to counter these measures. *Id.*; *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 97–98 (2d Cir.2007).

SLUSA requires dismissal of the following types of claims:

(1) A "covered" class action;

(2) Brought under state statutory or common law;

(3) Alleging misrepresentation or omission of a material fact or use of a manipulative or deceptive device;

(4) In connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). Because it only addresses class actions, SLUSA does not

---

**3.** Neither SLUSA itself nor its legislative history defines "in connection with."

**4.** In *Mandelbaum*, the court determined that the plaintiffs, though they avoided stating it

outright, had alleged fraudulent misrepresentation by the defendants. *Id.* at 1248, at *17. That is not the case here.

prevent a plaintiff from individually asserting any valid state law claims that he or she might have.

SLUSA does not actually "preempt" any individual state law causes of action, but rather denies plaintiffs the right to use the class action device to bring a securities claim in state or federal court unless they can satisfy the pleading standards applicable to federal securities laws claims. The Supreme Court has held that courts should give SLUSA a broad reading. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir.2008) (citing *Dabit*, 547 U.S. at 85–86, 126 S.Ct. 1503 (2006)).

The CAC satisfies two requirements for dismissal under SLUSA. First, this is a "covered class action," which is defined by SLUSA to include "any single lawsuit in which ... one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated...." 15 U.S.C. § 77p(f)(2)(A)(i)(II). *See* CAC ¶¶ 1, 26, 107. Second, Plaintiffs' state law claims of breach of fiduciary duty, breach of contract, unjust enrichment, and negligence are all based on state common law. However, the CAC does not satisfy SLUSA's remaining two requirements: there are no misrepresentations or omissions of a material fact or use of a manipulative or deceptive device made in connection with the purchase or sale of a covered security.

The CAC alleges that the Defendants: (1) turned the trust assets they were obligated to safeguard over to a third party (Nicholson); (2) failed to check with Depository Trust Corporation or other such organizations as to whether Nicholson continued to hold the assets in a properly segregated form or at all; (3) failed to act in accordance with the customs and standards in the industry to track, maintain custody over, hold, preserve, safeguard, and avoid the commingling of the trust assets; (4) failed to maintain title to the (non-existent) assets; (5) failed to contact beneficiaries during the course of their fiduciary relationship; (6) failed to obtain audited financial statements from a recognized accountant; (7) failed to conduct the required basic due diligence that would have revealed numerous red flags, including the fact that Nicholson had been permanently barred from the securities industry back in 2001; and (8) failed to furnish legally mandated statements accurately reflecting the value of the assets held in Plaintiffs' retirement and pension accounts. CAC § 51.

The CAC alleges that Defendants violated state and federal law by breach of fiduciary duty, ordinary and gross negligence, and unjust enrichment, thereby entitling Plaintiffs to restitution. No claim is made of misrepresentation or omission or the employment of a single manipulative or deceptive device in connection with the purchase or sale of a single covered security.

Courts have held that it is the allegations made in the complaint that form the basis of their SLUSA analysis: "[b]ecause the determination of whether SLUSA applies may only be made by reference to what a party has alleged, and not what it could have alleged, courts should be wary of a defendant's attempts to recast the plaintiff's complaint as a securities lawsuit in order to have it preempted by SLUSA." *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 216 F.Supp.2d 251, 257 n. 12 (S.D.N.Y.2002) overruled on other grounds by *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir.2003); *see also Paru v. Mutual of America Life Ins. Co.*, No. 04 Civ. 6907, 2006 WL 1292828, at *3 (S.D.N.Y. May 11, 2006) ("defendant may

not recast ... [the] Complaint as a securities fraud class action so as to have it preempted by SLUSA").

Plaintiffs acknowledge that the Court may choose to "look beyond the face of the [complaint] to determine whether [it alleges] securities fraud in connection with the purchase or sale of covered securities." *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir.2010). Furthermore, the Court must be mindful that a "narrow reading" of SLUSA "would undercut the effectiveness of [the PSLRA] and thus run contrary to SLUSA's stated purpose, viz., 'to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives' of [the PSLRA]." *Dabit*, 547 U.S. at 86, 126 S.Ct. 1503. At the same time, in *SEC v. Zandford*, 535 U.S. 813, 825 & n. 4, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002), the Supreme Court, analyzing Section 10(b) and Rule 10b–5 in a civil securities fraud case brought by the SEC, noted that although the phrase "in connection with" should be interpreted "flexibly to effectuate its remedial purposes," it "does not transform every breach of fiduciary duty into a federal securities violation." *Id.* (citations omitted). Applying *Zandford*'s reasoning in the SLUSA context, courts have held that " 'the fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves.' " *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130–31 (9th Cir.2002), *as amended in* 320 F.3d 905 (9th Cir.2003) (quoting *Ambassador Hotel Co. v. Wei–Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir.1999)). Explaining further, the court in *Falkowski* noted that "[w]hile the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction." *Falkowski*, 309 F.3d at 1130–31

(quoting *Ambassador Hotel*, 189 F.3d at 1026). Reviewing Plaintiffs' allegations with these holdings in mind, the Court still finds that the CAC's allegations are outside SLUSA's preemptive scope.

The guidance provided by the Court in *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F.Supp.2d 258 (S.D.N.Y.2004), is useful. In *Xpedior*, the Court held that under SLUSA, "regardless of the words used by a plaintiff in framing her allegations and regardless of the labels she pastes on each cause of action, a court must determine whether fraud is a *necessary component* of the claim." *Id.* at 261 (emphasis in original). In other words, "the simple inquiry is whether plaintiff is pleading fraud in words and substance." *Id.* at 268. Under the necessary component test, "a complaint is preempted under SLUSA when it asserts (1) an explicit claim of fraud or misrepresentation (*e.g.*, common law fraud, negligent misrepresentations, or fraudulent inducement), or (2) other garden-variety state law claims that 'sound in fraud.' " *Id.* at 261. In *Xpedior*, the court held that the claims of violation of an underwriting agreement were not preempted by SLUSA, reasoning that fraud was not a necessary component of the breach of contract claims. *Id.* at 270.

In *Romano*, the Second Circuit recently dealt with this issue when it held that a "defendant's alleged fraud must 'coincide' with plaintiff's purchase or sale of covered securities to meet SLUSA's 'in connection with' requirement." 609 F.3d at 521 (quoting *Dabit*, 547 U.S. at 85, 126 S.Ct. 1503). The Court explained that "SLUSA's 'in connection with' standard is met where plaintiff's claims 'turn on injuries caused by acting on misleading investment advice'—that is, where plaintiff's claims 'necessarily allege,' 'necessarily involve,' or 'rest on' the purchase or sale of securities."

*Id.* at 522 (quoting *Dabit v. Merrill Lynch, Fenner & Smith, Inc.,* 395 F.3d 25, 48, 50 (2d Cir.2005)).

Courts have demonstrated a willingness to preclude cases under SLUSA where the plaintiffs clearly raise claims involving or sounding in fraud. *See Dabit,* 547 U.S. at 89, 126 S.Ct. 1503 (finding SLUSA pre-emption appropriate where the complaint made explicit allegations of securities fraud through manipulation designed to inflate the prices of stocks). In *Levinson,* 2009 WL 5184363, at *9, the plaintiffs alleged that the defendants "engaged in a scheme" with Bernard Madoff "to operate a common investment fund" and "induced plaintiffs into investing their assets in the fund by misrepresenting the extent to which [they] would safeguard their assets." The Court found that according to the terms of the complaint, "some of the misrepresentations . . . were necessary conditions for . . . Madoff's purported purchase and sale of securities for Plaintiffs' fund." *Id.* The *Levinson* plaintiffs also brought claims for civil RICO (with fraud as the predicate act), common law fraud, negligent misrepresentation and aiding and abetting conversion and statutory theft. *Id.* at *1. Applying *Xpedior*'s necessary component test, the Court found that "because a misrepresentation or other fraudulent conduct [was] a necessary element of [those] causes of action," they were preempted by SLUSA. *Id.* at *12. Notably, the complaint in *Levinson* alleged that the defendants intended to breach their contractual obligations at the time the contracts were formed. *Id.* at *13. The non-fraud-based causes of action had incorporated by reference all the preceding allegations, including allegations of intentional misrepresentation. *Id. See also Newman v. Family Management Corp.,* 748 F.Supp.2d 299 (S.D.N.Y.2010) (where plaintiffs alleged that defendants had engaged in common law fraud as well as numerous Securities Act violations, SLUSA preclusion was applied); *In re Beacon Associates Litigation,* 745 F.Supp.2d 386, 429–31 (S.D.N.Y.2010) (same).

However, where claims of fraud or sounding in fraud are not raised by a plaintiff, Courts have been unwilling to apply SLUSA preclusion. *See LaSala v. Bank of Cyprus Public Co. Ltd.,* 510 F.Supp.2d 246, 273–74 (S.D.N.Y.2007) (cautioning, post-*Dabit,* against over-reaching interpretations of the "in connection with" requirement that would lead to absurd results, and rejecting a motion to dismiss claims that did not sound in fraud); *Montreal Pension Plan,* 750 F.Supp.2d at 453, 454, 455 (where plaintiffs alleged that certain defendants had made various "untrue statements of material fact" about hedge funds by distributing "materially false monthly statements regarding the net asset value . . . and other performance information," the Court found that defendants were "taking [*Dabit* ] out of context" and noted that, in *Dabit,* the Supreme Court had "addressed the narrow question of whether SLUSA preempted state-law claims brought by holders of securities, as well as those of purchasers and sellers." In rejecting the defendants' bid for summary judgment on state-law claims, the Court found that "covered securities are not 'at the heart' " of plaintiffs' case and ruled that "[t]he interpretation of SLUSA urged by the . . . [d]efendants stretches the statute beyond its plain meaning.") (internal citations omitted); *Paru,* 2006 WL 1292828, at *5 (denying defendant's motion to dismiss under SLUSA where it was clear plaintiff's allegations were not based, "either explicitly or implicitly, on any misstatements or omissions," but rather on the allegation that "defendant had a fiduciary obligation to take certain measures to protect the long term viability of plaintiff's investments, defendant failed to

do so, and such failure resulted in plaintiff being harmed.")

The CAC also fails to satisfy the fourth SLUSA requirement, that the misrepresentations be made in connection with the purchase or sale of a covered security. In *Anwar v. Fairfield Greenwich Ltd.*, the Court addressed similar facts to those presented here. The defendants in *Anwar* argued that because the plaintiffs' assets were ultimately funneled into a Ponzi scheme that outwardly purported to invest in covered securities, the complaint's state law claims were preempted. *Anwar*, 728 F.Supp.2d at 398–99. After acknowledging that, post-*Dabit*, it was obliged to interpret the statute's "in connection with" language broadly, the Court found that "stretching" the statute to preclude the allegations before it would "snap[ ] even the most flexible rubber band." *Id.* at 399.

Here, as in *Anwar*, the investment to be purchased was an intermediate fund, the Westgate Fund, itself not a covered security. Plaintiffs' allegations against Defendants do not sound in fraud or allege fraud-based causes of action. The rubber band of "in connection with" does not reach beyond Westgate to Nicholson's Ponzi scheme.

**b. Delaware Law Applies to the Contract Claims While New York, New Jersey, and California Law Apply to the Tort Claims**

 A federal district court applies the choice-of-law rules of the State in which it sits. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In New York, "[i]t is well settled that courts will enforce a choice of law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Lupien v. Lupien*, 68 A.D.3d 1807, 891 N.Y.S.2d 785, 785–86 (4th Dept.2009) (internal citations

and quotation marks omitted). The SIRTA governing the parties' relationship contains a choice of law provision that states; "This Trust Agreement is made pursuant to and shall be construed in accordance with the laws of the State of Delaware." SIRTA § 5.8(K). As Plaintiffs allege, Delaware Charter Guarantee & Trust Company is organized under the laws of Delaware with its principal place of business in Wilmington, Delaware. As a result, this Court will enforce the Trust Agreement's choice of law clause and apply Delaware law with respect to Plaintiffs' breach of contract claims.

 Under New York choice of law rules, tort claims are outside the scope of contractual choice of law provisions. *Plymack v. Copley Pharm., Inc.*, No. 93 Civ. 2655, 1995 WL 606272, at *5 (S.D.N.Y. Oct.12, 1995) (Under New York law, "[a] contractual choice-of-law provision . . . does not bind the parties with respect to non-contractual causes of action.") (citing *Fustok v. Conticommodity Servs., Inc.*, 618 F.Supp. 1082, 1089 (S.D.N.Y.1985)). To determine which law applies in a tort action, New York courts apply an "interest analysis," under which the law of the jurisdiction with the greatest interest in the litigation applies. *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir.1992) (citing *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)); *see also Babcock v. Jackson*, 12 N.Y.2d 473, 481–82, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). "Two separate inquiries are . . . required to determine the greater interest: (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994) (citing *Schultz*, 65 N.Y.2d at 198,

491 N.Y.S.2d 90, 480 N.E.2d 679). Where the laws alleged to be in conflict are conduct-regulating, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Mach.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *see also Ackerman v. Price Waterhouse*, 252 A.D.2d 179, 683 N.Y.S.2d 179, 189 (1st Dept.1998) (quoting *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277); *In re New York City Asbestos Litigation*, 32 Misc.3d 161, 168–169, 921 N.Y.S.2d 466 (2011) (quoting *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277). "With respect to tort claims, this is usually the state where the tort took place." *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y.2004). In cases such as this, the locus of the tort tends to be where the alleged victims resided, as that is the locus of their economic loss. *Id. See also Bon Jour Group, Ltd. v. Elan–Polo, Inc.*, No. 96 Civ. 6705, 1997 WL 401814, at *4 (S.D.N.Y. July 16, 1997) ("where the location of the alleged tort is not apparent, the tort is deemed to occur where the party resides and sustained an economic loss resulting from the tort") (citation omitted). On the other hand, where the conflicting laws are loss-allocating, "other factors are taken into consideration, chiefly the parties' domiciles." *New York City Asbestos Litigation*, 32 Misc.3d at 169, 921 N.Y.S.2d 466 (quoting *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277).

 Here, Plaintiffs allege that Defendants breached their fiduciary duties and were otherwise negligent in fulfilling their obligations to Plaintiffs. These alleged legal duties are conduct-regulating. In terms of contacts, Defendants are Delaware corporations with their primary places of business in Delaware and Iowa. Plaintiffs resided in New York, New Jersey, and California when injured. Defendants contend that the Court should apply the laws of these three jurisdictions, as they represent the locus of the harm.[5] In light of the foregoing, the laws of New York, New Jersey, and California will be applied to Plaintiffs' tort claims.

**c. The Motion to Dismiss the Contract Claims is Granted in Part and Denied in Part**

Plaintiffs assert three state common law breach of contract claims (Pl. Opp. Mem. at 20):(1) Defendants breached their contractual obligation "[t]o hold any securities in bearer form or in the name of the banks, brokers, and other custodians or in the name of the trustee without qualification or descriptions or in the name of any nominee" (CAC ¶¶ 51, 122); (2) Defendants breached their contractual obligations not to commingle the trust with any other property they held (CAC at ¶ 124, IRC § 408(a)(5), 26 C.F.R. §§ 1.408–2(b)(5)(i)); and (3) Defendants breached their obligations to determine the assets held at the end of each calendar year and make a report of same, and furnish such report to Plaintiffs. (CAC at ¶ 168.)

 Defendants' obligation "[t]o hold any securities in bearer form or in the name of the banks, brokers, and other custodians or in the name of the trustee without qualification or descriptions or in the name of any nominee" comes from SIRTA § 5.5(F). Plaintiffs claim that De-

---

**5.** Plaintiffs contend that only New York law should be applied because the underlying fraud which damaged the Plaintiffs' accounts was orchestrated in New York. However, that conduct is not the alleged tort in this action, and it was not perpetrated by any of the defendants. Therefore, it is not part of the interest analysis.

fendants failed to meet their obligations in this regard. *See* CAC ¶¶ 51, 90. Defendants contend that they met all of their contractual obligations, particularly in light of that fact that SIRTA § 5.5(F) allows Defendants "[t]o leave any securities or cash for safekeeping or on deposit, with or without interest, with such banks, brokers and other custodians as the Trustee may select." However, as is discussed in further detail below, such factual disputes, including the interpretation of ambiguous contract provisions, are inappropriate for resolution on a motion to dismiss.

■ However, Plaintiffs have failed to allege the breach of a contractual duty not to commingle the trust funds with any other properties. Plaintiffs apparently base this asserted duty on IRC § 408(a)(5) and 26 C.F.R. §§ 1.408–2(b)(5)(i). Even if it is assumed that such a duty is read into the SIRTA by its stated purpose ("to establish a Traditional IRA under Internal Revenue Code ("Code") Section 408(a)"), Defendants have contended that Plaintiffs' allegation that Principal Trust "commingled" their funds is unsupported by any specific allegations. *See, e.g.,* CAC ¶¶ 11, 12, 14, 140. The CAC alleges that Nicholson commingled Plaintiffs' assets within the Westgate funds, not that Defendants ever actually "commingled" any assets themselves. *See* CAC ¶¶ 16, 22, 146. Plaintiffs' allegations fail to identify how or why Defendants would be contractually liable for the "commingling" of funds by a third party. To the contrary, IRA trustees such as Principal Trust cannot be held liable for a third party's alleged breaches of trust. *See Metz v. Indep. Trust Corp.,* 994 F.2d 395, 402 (7th Cir.1993).

■ With regard to the third listed obligation, SIRTA § 5.5(N) provides as follows:

Within ninety (90) days from the close of each Trust Year, the Trustee shall render an accounting, valuing the assets at fair market value, to the Account Holder. The accounting may consist of copies of regularly issued broker-dealer statements to the Trustee and copies of mutual fund, insurance company, and other investment summary account statements supplied to the Trustee. The Account Holder must file any exceptions or objections to the accounting with the Trustee in writing, within sixty (60) days of the mailing of such accounting. In the absence of such filing, the Account Holder shall be deemed to have approved such account; and in such case, or upon the written approval of the Account Holder of any such account, the Trustee shall be released, relieved and discharged with respect to all matters and things set forth in such account as though such account had been settled by the decree of a court of competent jurisdiction. No person other than the Account Holder may require an accounting or bring any action against the Trustee with respect to the Trust or its actions as Trustee.

The CAC at ¶ 168 provides:

168. The defendants breached their contract by failing to furnish the required annual report. *See* IRS Letter in Application Booklet.

Defendants' disputes and denials of the facts alleged in the CAC are improper for a Rule 12(b)(6) motion to dismiss, where factual allegations are taken as true and viewed in a light most favorable to Plaintiffs. *In re Morgan Stanley ERISA Litig.,* 696 F.Supp.2d 345, 353 (S.D.N.Y. 2009).

Defendants have contended that Plaintiffs actually received quarterly statements from the Trust Company regarding their IRA accounts. (Def. Mem. in Supp. at 26). This is contrary to the CAC, which alleges

that documents were sent directly to Nicholson and not to Plaintiffs, and that no funds actually remained in Class Member accounts after Nicholson's depredations. CAC ¶¶ 51, 126–29. These allegations are sufficient to state a claim for breach of contract.

Defendants contend that the SIRTA's exculpatory language immunizes them from Plaintiffs' breach of contract claims. However, the exculpatory language in the agreement does not clearly apply to Plaintiffs' claims regarding holding assets and furnishing annual reports. Therefore, these breach of contract claims survive the exculpatory language at this stage. Furthermore, the SIRTA itself acknowledges in § 5.8(B) that the trustee may be liable for intentional misconduct or negligence.

Plaintiffs' breach of contract claims are also based in part on various "letters" Principal Trust allegedly sent to Plaintiffs. For example, Plaintiffs' first breach of contract claim (Count 1) contains two allegations based on a "Form letter of understanding" allegedly transmitted to Plaintiffs: namely, that Principal Trust failed to perform by (i) not undertaking an administrative review of Nicholson prior to Plaintiffs' investment;[6] (ii) "having a business relationship" with Nicholson; and (iii) "engaging in a prohibited transaction" under Section 4795 of the Internal Revenue Code. CAC ¶¶ 51(h), 126–128. Plaintiffs further allege that Defendants failed to provide Plaintiffs with reports of all transactions related to the IRA based on an "IRS letter in Application Booklet." CAC ¶ 129; see also CAC ¶¶ 21, 51(j), 61, 63, 131, 168. Plaintiffs have sufficiently identified the letters at issue and have

sufficiently alleged that they constitute agreements between the parties which Defendants then breached. As such, these claims survive the motion to dismiss.

### d. The Economic Loss Doctrine Does Not Bar Plaintiffs' Negligence Claims

Defendants contend that the economic loss rule bars all of Plaintiffs' tort claims. (Def. Mem. in Supp. at 31).

■■■ Where plaintiffs allege primarily economic loss as an injury in a tort claim, " 'the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie.' " *In re Adelphia Communications Corp.*, No. 02–41729, 2007 WL 2403553, at *9 (Bankr.S.D.N.Y. Aug. 17, 2007) (citation omitted); *see also Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 22 Cal.Rptr.3d 352, 102 P.3d 268, 272 (2004); *Dean v. Barrett Homes, Inc.*, 406 N.J.Super. 453, 968 A.2d 192, 202 (2009) (describing standards similar for motion to dismiss purposes). The purpose of the rule is:

> [T]o keep contract law from drown[ing] in a sea of tort ... [and with this goal in mind] New York courts restrict plaintiffs who have suffered economic loss, but not personal or property injury, to an action for the benefits of their bargains. Thus, [i]f the damages suffered are of a type remediable in contract, a plaintiff may not recover in tort.

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A*, 244 F.R.D. 204, 220 (S.D.N.Y.2007) (quotation marks and citations omitted). *See also Robinson Helicopter Co.*, 22 Cal.Rptr.3d 352, 102 P.3d at 272; *Dean*, 968 A.2d at 202. "Moreover,

---

**6.** The CAC states that the administrative review was "contractually obligated." CAC ¶ 51(h). To the extent that Plaintiffs allege that the SIRTA provided for such a review, the Court finds that the contractual language

is ambiguous as to Defendants' responsibilities to evaluate Nicholson in advance of investment. Therefore, this claim is not appropriate for resolution on a motion to dismiss.

by preventing the encroachment of tort law into the domain of contract, the economic loss doctrine protects parties' abilities to allocate risk by mutual agreement and thereby form reliable expectations about their potential financial exposure with respect to the duties and liabilities that they have contractually assumed." *Travelers Cas. and Sur. Co. v. Dormitory Authority—State of New York,* 734 F.Supp.2d 368, 379 (S.D.N.Y.2010). *See also Dana,* 22 Cal.Rptr.3d 352, 102 P.3d at 276 (economic loss doctrine allows parties to allocate risk); *Alloway v. General Marine Indus. L.P.,* 149 N.J. 620, 628, 695 A.2d 264 (N.J.1997) (same).

As stated by the New York Court of Appeals,

> [A] defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations. The very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim. Where a party has fraudulently induced the plaintiff to enter into a contract, it may be liable in tort, or where a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim. Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie.

*New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y.1995).

██ Significantly, the SIRTA explicitly carves out claims of negligence from its coverage. Section 5.8(B) provides that "[t]he Trustee shall not be liable for any act or omission made in connection with the Trust except for its intentional misconduct or negligence." Plaintiffs' negligence claims thus seek to enforce duties outside of the contract and cannot be precluded by Plaintiffs' contract claims.

As noted above, the purpose of the economic loss doctrine is to allow parties to allocate risk. In light of SIRTA § 5.8(B), it would be improper to apply the economic loss doctrine to dismiss Plaintiffs' negligence claims.

### e. Plaintiffs Adequately Plead Their Negligence Claims

██ To establish a prima facie case of negligence, a plaintiff must establish "(1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3) proximate cause, and (4) actual damages." *Brunson v. Affinity Fed. Cred. Union,* 199 N.J. 381, 400, 972 A.2d 1112 (2009). *See also Iversen v. California Village Homeowners Assn.,* 123 Cal.Rptr.3d 360 (Cal. App.Dist.2 2011) (Negligence requires "a legal duty to use due care, a breach of that duty, and [that] the breach is the proximate or legal cause of the resulting injury."); *Jiminez v. Shahid,* 83 A.D.3d 900, 900–01, 922 N.Y.S.2d 123 (2d Dept.2011) (same).

The Defendants urge dismissal of the Plaintiffs' claims of negligence because of the absence of any duty enumerated in the SIRTA. (Def. Mem. in Supp. at 25–29.)

The SIRTA is characterized throughout as a Trust and describes the aspects of a "Traditional IRA under the Internal Revenue Code ("Code") Section 408(a)" and includes provisions with respect to investments and administration. *See* SIRTA, Art. I, V. The SIRTA charges Defendants with three main duties: (1) to accept con-

tributions and make investments "in accordance with the instructions of the Account Holder," including "through the facilities of [a] Brokerage Firm" selected by the Account Holder (SIRTA §§ 5.1(E), 5.5(G)); (2) to make distributions out of the IRA account "on the written directions of the Account Holder" (SIRTA § 5.3(A)); and (3) to perform limited administrative services with respect to the accounts, including rendering accountings (including through information supplied in broker-dealer statements) (SIRTA § 5.5(N)).

CAC Count 2 alleges that, under federal law, Defendants "negligently failed to preserve, to retain control over, to hold, and to safe-keep the Trust res" and "negligently failed to prevent the commingling and dissipation of the Trust res." CAC ¶¶ 135–36. Count 6 appears to bring Count 2's allegations under state law. CAC ¶ 150. Count 9 appears to allege negligence under state law for failure to furnish statements to Plaintiffs, though the Count refers to Count 6. CAC ¶ 158. Count 13 also alleges that Defendants were negligent under state law for their failure to furnish an accurate report. CAC ¶ 171. Count 17 alleges negligence under federal law on the basis of Defendants' failure to render accurate annual statements. CAC ¶ 190. Count 21 appears to bring Count 17's allegations regarding Defendants' failure to render reports under state law. CAC ¶ 203.

As discussed above, the SIRTA itself acknowledges in § 5.8(B) a liability for intentional misconduct or negligence by the trustee. This acknowledgement trumps Defendants' contention.

### f. The Motion to Dismiss the Breach of Fiduciary Duty Claims is Denied

█ Under New York law, a claim for breach of fiduciary duty requires: (1) the existence of a fiduciary duty between the parties; (2) a breach of that duty; (3) the defendant's knowing participation in that breach; and (4) damages resulting from that breach. *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities,* 446 F.Supp.2d 163, 195–96 (S.D.N.Y.2006). A fiduciary relationship may arise through contract. *Id. See also Gutierrez v. Girardi,* 194 Cal.App.4th 925, 932, 125 Cal. Rptr.3d 210 (Cal.App.Dist.2 2011) ("The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach") (quoting *Stanley v. Richmond,* 35 Cal.App.4th 1070, 1086, 41 Cal. Rptr.2d 768 (Cal.App.Dist.1 1995)). Such a breach may be found in any case "in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,* 216 F.Supp.2d 198, 218 (S.D.N.Y.2002) (quoting *Penato v. George,* 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (2d Dept.1976)). Under New Jersey law,

The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. *Restatement (Second) of Torts* § 874 cmt. a (1979); *see In re Stroming's Will,* 12 N.J.Super. 217, 224, 79 A.2d 492 (App.Div.), certif. denied, 8 N.J. 319, 85 A.2d 272 (1951) (stating essentials of confidential relationship "are a reposed confidence and the dominant and controlling position of the beneficiary of the transaction"); *Blake v. Brennan,* 1 N.J.Super. 446, 453, 61 A.2d 916 (Ch.Div.1948) (describing "the test

[as] whether the relationship between the parties were of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other"); Bogert, *Trusts and Trustees 2d* § 481 (1978) (stating "[t]he exact limits of the term 'fiduciary relation' are impossible of statement. Depending upon the circumstances of the particular case or transaction, certain business, public or social relationships may or may not create or involve a fiduciary character."). The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care. *Restatement (Second) of Trusts* §§ 170, 174 (1959). Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship. *Restatement (Second) of Torts* § 874 (1979).

*F.G. v. MacDonell*, 150 N.J. 550, 696 A.2d 697, 703–04 (1997). Under California law, a plaintiff must establish that the fiduciary voluntarily accepts his role: "a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. . . .'" *Wolf v. Superior Court*, 107 Cal.App.4th 25, 130 Cal.Rptr.2d 860, 863 (2003) (citing *Herbert v. Lankershim*, 9 Cal.2d 409, 483, 71 P.2d 220 (1937); *In re Marriage of Varner*, 55 Cal.App.4th 128, 141, 63 Cal.Rptr.2d 894 (Cal.App.Dist.4 1997)).

The CAC has alleged that the Defendants acknowledged to Plaintiffs and Class Members, in various IRA account documents and other written materials, their fiduciary obligations to monitor and safeguard the investments of Plaintiffs and Class Members. The CAC has also alleged that Defendants were fiduciaries through their role as account custodians and trustees. The CAC has sufficiently alleged that Defendants had fiduciary duties with respect to Plaintiffs and that Defendants breached those duties.[7]

Plaintiffs correctly note that the extent to which Defendants owed fiduciary duties to Plaintiffs, and then breached those duties, are questions of fact that should not be resolved on a motion to dismiss. *See Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank*, 261 F.R.D. 13, 26 (S.D.N.Y.2009) ("New York courts generally avoid dismissing a claim of breach of fiduciary duty . . . because it usually involves a question of fact: whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence"); *Abercrombie v. Andrew Coll.*, 438 F.Supp.2d 243, 274 (S.D.N.Y.2006) (whether a fiduciary duty exists "normally depends on the facts of a particular relationship, [and] therefore a claim alleging the existence of a fiduciary duty is not subject to dismissal"); *F.G.*, 696 A.2d at 704.

■■■ However, under New York law, "a cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand." *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 76 A.D.3d 310, 901 N.Y.S.2d 618, 636 (1st Dept.2010) (citing

---

7. In *Hines*, 2010 WL 1249838, at *2–3, the court held that custodial, non-discretionary IRAs do not impose fiduciary duties upon the trustees and are not trusts for any other purpose by taxes. *See Id.*, citing IRC § 408(h).

Here, the Court finds that Plaintiffs sufficiently allege the existence of fiduciary duties arising from Defendants' relationship with Plaintiffs.

*Granirer v. Bakery, Inc.,* 54 A.D.3d 269, 863 N.Y.S.2d 396, 399 (1st Dept.2008); *William Kaufman Org. v. Graham & James,* 269 A.D.2d 171, 703 N.Y.S.2d 439, 442 (1st Dept.2000)). New Jersey and California have similar pleading rules. *See Jack v. Concordia Homes of Cal., LLC,* No. D049863, 2008 WL 802605, at *6 (Cal. Ct.App. Mar. 27, 2008) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.") (citation omitted); *Stewart Title Guar. Co. v. Greenlands Realty, L.L.C,* 58 F.Supp.2d 370, 386–87 (D.N.J.1999) ("[the] tort claim for breach of fiduciary duty arises out of its title insurance policy . . . [t]hus, [the] claim . . . for breach of fiduciary duty sounds in contract, rather than in tort."). *See also Mandelbaum,* 09 Civ. 752, 787 F.Supp.2d at 1253, 2011 WL 1225549 at *21 (dismissing breach of fiduciary duty claims under Colorado law where they overlapped with breach of contract claims and where the defendants did not have independent fiduciary duty claims because IRC § 408 did not provide them and state law did not govern IRAs).

However, "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Mandelblatt v. Devon Stores,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dept.1987). In *Centro Empresarial,* the Court held that the relevant fiduciary duties arose from the contract at issue, but that they existed independently of that agreement and thus were not subject to dismissal on duplicity grounds. 901 N.Y.S.2d at 636. *See also Prohealth Care Associates, LLP v. April,* No. 15830–03, 4 Misc.3d 1017(A), 2004 WL 1872915, at *5 (N.Y.Sup. Aug. 18, 2004) ("The same conduct may constitute both a breach of contract and a breach of a fiduciary duty.") (citing *Bender Ins. Agency, Inc. v. Treiber*

*Ins. Agency, Inc.,* 283 A.D.2d 448, 729 N.Y.S.2d 142 (2nd Dept.2001); *Davis v. Dime Savings Bank of New York,* 158 A.D.2d 50, 557 N.Y.S.2d 775 (3rd Dept. 1990)). Similar exceptions exist under California and New Jersey law for independent fiduciary duty claims. *Jack,* 2008 WL 802605, at *6 (under California law, "[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies") (quotation marks and citation omitted); *Stewart,* 58 F.Supp.2d at 387 (indicating an exception under New Jersey law where a defendant takes on an obligation independent of the contractual obligations).

Plaintiffs' state law breach of fiduciary duty claims invoke breaches of the SIRTA and appear to overlap with their contract claims, particularly given that Plaintiffs contend that the SIRTA necessarily incorporated Defendants' fiduciary duties. *See* CAC ¶ 9 ("Defendants' standardized contract incorporated federal law concerning IRAs"), ¶ 10 ("Under this standardized form contract and federal law, Defendants owed minimum federal fiduciary duties to each Class member"). *See also* CAC ¶¶ 42, 44, 45, 46, 47, 48, 50 (setting forth the alleged fiduciary duties which federal law required to be written into the SIRTA, and which allegedly were written into the SIRTA). Despite these apparent overlaps, Plaintiffs contend that Defendants owed them independent fiduciary duties because of their roles as IRA trustees.

As noted above, it is inappropriate at the motion to dismiss stage to assess whether, as a matter of fact, Defendants actually owed fiduciary duties to Plaintiffs. *See Musalli,* 261 F.R.D. at 26. Plaintiffs have sufficiently alleged the existence of a fiduciary relationship through Defendants' roles as trustees and custodians of Plain-

tiffs' IRAs.[8] Therefore, Plaintiffs' breach of fiduciary duty claims survive.

### g. The Motion To Dismiss The Unjust Enrichment Claim Is Granted

 To state a claim for unjust enrichment in New York[9], a plaintiff must allege that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make restitution. *Intellectual Capital Partner v. Institutional Credit Partners LLC*, No. 08 Civ. 10580, 2009 WL 1974392, at *8 (S.D.N.Y. Jul. 8, 2009). *See also VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994) (under New Jersey-law, unjust enrichment claims require a plaintiff to "show both that defendant received a benefit and that retention of that benefit without payment would be unjust."). Unjust enrichment does not require a direct relationship between the parties. *See In re Canon Cameras Litig.*, No. 05 Civ. 7233, 2006 WL 1751245 at *2 (S.D.N.Y. June 23, 2006); *see also Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40–41, 778 N.Y.S.2d 147 (1st Dept.2004).

 There does not appear to be a claim for unjust enrichment as such under California law. *See Levine v. Blue Shield of California*, 189 Cal.App.4th 1117, 117 Cal.Rptr.3d 262, 278–79 (2010) ("Although some California courts have suggested the existence of a separate cause of action for unjust enrichment, this court has recently held that there is no cause of action in California for unjust enrichment. Unjust enrichment is synonymous with restitution. Thus, the [plaintiffs'] unjust enrichment claim does not properly state a cause of action.") (internal quotation marks and citations omitted). Plaintiffs' unjust enrichment claim under California law will thus be treated as a claim for restitution under a theory of unjust enrichment. The elements of such a claim are "the receipt of a benefit and unjust retention of the benefit at the expense of another." *Madrid v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 731, 2009 WL 3255880, at *5 (E.D.Cal. Oct. 8, 2009) (citing *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (Cal.App.Dist.2 2000)).

The CAC has alleged that Defendants received fees from Plaintiffs while unjustifiably failing to perform their duties under the agreement. CAC ¶¶ 53, 54, 64, 75, 92.

 However, under the law of New York, New Jersey, and California, the existence of a valid and enforceable contract governing a particular subject matter precludes recovery for unjust enrichment arising out of the same matter. *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1272 (S.D.N.Y.1991) ("Unjust enrichment is a quasi-contract claim,

---

8. In *Adams v. Fiserv ISS*, No. D051778, 2008 WL 3890036, at *2–4 (Cal.App.Dist.4 Aug. 22, 2008), the Court held that the defendant owed fiduciary duties to the plaintiffs through its role as trustee of self-directed IRA accounts.

9. Under New York choice of law rules, interest analysis is applied to claims arising in equity, such as claims for unjust enrichment. *See In re Hydrogen, LLC*, 431 B.R. 337, 359 (Bkrtcy.S.D.N.Y.2010) (citing *Icebox–Scoops, Inc. v. Finanz St. Honore, B.V.*, 676 F.Supp.2d 100, 109–10 (E.D.N.Y.2009)) (applying New York's interest analysis to determine the governing law for an unjust enrichment claim); *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (applying the "significant-contacts test" to unjust enrichment claims.) As with the tort claims, the states in which Plaintiffs resided have the most significant contacts, as they are the places of contracting, where performance was to occur, and where Plaintiffs suffered losses. *Grand Theft Auto*, 251 F.R.D. at 149–50. In this case, these states are New York, New Jersey, and California.

and the existence of a *valid and enforceable* written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the subject matter.") (internal quotation marks and citations omitted; emphasis in original); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F.Supp. 976, 994 (S.D.N.Y.1989) ("Unjust enrichment is designed to prevent one person who has obtained a benefit from another without ever entering into a contract with that person from unjustly enriching himself at the other person's expense.") (internal quotation marks and citation omitted); *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682, 699 (2010) ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract.") (citations omitted); *Shalita v. Twp. of Wash.*, 636 A.2d 568, 571, 270 N.J.Super. 84, 90 (N.J.Super.Ct.App.Div.1994) ("It has been said that [q]uasi-contract liability [should] not be imposed … if an express contract exists concerning the identical subject matter.") (alteration in original; citations omitted). Plaintiffs cannot raise an unjust enrichment claim where, as here, a valid, enforceable contract governs their relationship with Defendants.

Plaintiffs contend that, under IRS rules, IRA contracts must contain certain minimum requirements or they fail. If Defendants' express contracts do not meet the regulations and thus are invalid IRA contracts, Plaintiffs are entitled to assert an unjust enrichment theory in the alternative. *Intellectual Capital Partner v. Institutional Credit Partners, LLC*, No. 08 Civ. 10580, 2009 WL 1974392, at *8 (S.D.N.Y. Jul.8, 2009) ("Where, as here, the existence of an enforceable contract is disputed, these claims may proceed alongside IntelCap's breach of contract claim as alternative theories."); *Labajo v. Best Buy Stores, L.P.*, 478 F.Supp.2d 523, 531 (S.D.N.Y.2007) ("When there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim."); *Durell*, 108 Cal.Rptr.3d at 699 (where contract is procured by fraud or otherwise unenforceable or ineffective, unjust enrichment may be pleaded). While Plaintiffs claim that the written contracts unlawfully purport to disclaim some of these requirements in their opposition papers (Pl. Opp. Mem. at 29), they do not appear to allege such contractual shortcomings in the CAC. Rather, Plaintiffs allege that the SIRTA was a valid contract which Defendants breached. Without an allegation that the SIRTA is invalid, Plaintiffs may not proceed with their unjust enrichment claim.

Plaintiffs' unjust enrichment claim is dismissed.

### Conclusion

Based on the foregoing, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs are granted leave to file an amended complaint with claims under state law within 60 days.

It is so ordered.